## Samuel F. Hersey v. The Huron Salt & Lumber Manufacturing Co.

*Contract construed: Distribution of proceeds of sales.*    The contract in this case,.
for the cutting, running and delivery of certain logs by the first party, and for
the advancing of money therefor, and the sawing and manufacturing, of the
same into lumber, and the shipping and sale thereof by the second party, and
for the distribution of the proceeds, is construed to intend that the deductions
therein provided for on account of advances made, charges, freight, insurance,.
etc., were to be taken from the gross undivided proceeds of sales, and not from.
the share of the second party alone.

*Heard July 15 and 16.    Decided July 23.*

Error to Saginaw Circuit.

This suit was brought by Hersey, assignee of Buck, Hollihan & Co., upon the following contract:

"Agreement between Buck, Hollihan & Co. and The Huron Salt & Lumber Manufacturing Company. This agreement, made this 15th day of February, A. D. 1867, between Buck, Hollihan & Co., of East Saginaw, Michigan, parties of the first part, and The Huron Salt & Lumber Manufacturing Company, Salzburg, Bay county, Michigan, parties of the second part, witnesseth:

"The first parties hereby sell and agree to sell to the second party all the logs now cut and banked on the Tobacco river, in town 17 north, range 3 west, and marked 17 * 3, and also agree to sell and deliver to the second party all the logs they shall cut and bank as aforesaid, during the present winter, to be marked 'CH.'

"The above logs have been cut and are to be cut on lands bought by the first parties of George S. Frost, of Detroit, and now held under contract of purchase.

"The first parties hereby further sell and deliver to the second parties all the logs now on the bank and marked 'Q,' being all the logs so marked and cut by Cross & Marshall, on the Chippewa river, and agree to sell and deliver to the second parties all the logs that shall be cut on the Chippewa river this winter by said Cross & Marshall, and all the logs to be cut shall be marked 'CH.'

"The first parties further hereby sell to the second parties all the logs now cut and banked on the Tittabawassee river, in town 6 north, of range 1 east, by Charles Townsend, and marked 'C. W. T.,' and agree to sell and deliver to the second parties all the logs that shall be cut this winter by said Charles Townsend in the last mentioned town, the logs so to be cut to be marked 'CH.'

"The first parties further agree that all the said logs shall be of the usual lengths for making pine lumber, shall be well manufactured, and shall scale at least six million feet, and they guarantee that all said logs cut and to be cut shall make lumber that will run at least thirty per

cent. of the three upper qualities; that as early in the spring of this year as the water will. permit, they will run to the Tittabawassee boom and deliver in the boom of the mill of the second party, as fast as they are wanted for sawing, at least six million feet of the quality above mentioned.

"It is mutually understood and agreed that the undivided one-half of the logs now cut shall be and become the absolute property of the second party. when this contract is signed, and that the undivided one-half of the said logs to be cut and banked shall be and become the absolute property of the second party as and when the same are banked and marked as aforesaid; and that the second party shall have the exclusive possession and right of possession of and lien on all said logs cut and to be cut and banked, and of the lumber made therefrom, until said lumber is shipped, as hereinafter provided; and that neither party will sell, use, dispose of, mortgage, pledge, or in any manner incumber said logs or any part thereof, or contract so to do, except in the manner in this contract mentioned, and that from the purchase price, as hereinafter mentioned, there shall be deducted, to be paid to the second parties, or retained by them out of the proceeds of all the lumber, twenty-eight cents per thousand feet for each one per cent. that all of said logs shall fall short of the quality herein before mentioned and guaranteed; and there shall be paid to the first parties, in addition to eight dollars a thousand, twenty-eight cents per thousand feet for every one per cent. that all said logs shall exceed the quality above guaranteed.

" The second parties agree to take said logs at their said mill boom, and manufacture the same into lumber in a workmanlike manner, and so as to be of the most profit to both parties, to pile said lumber on their mill dock in a good and workmanlike manner and convenient for shipment.

" They further agree to ship all the lumber made from

said logs as fast as practicable to Chicago, and there pile and keep the same for sale in the most economical manner, the lumber to be shipped to Chicago in the name of the second parties: *Provided*, That sales of lumber may be made from the yard or afloat, as may be the most profitable.

"The second party further agree to pay to the first party for one-half the logs above sold and agreed to be delivered, eight dollars per thousand feet, with the addition or deduction for variation in quality, as above mentioned; and as said second party has made certain advances on said logs, and more advances are required to enable the first parties to carry out their part of this agreement, the second parties hereby agree to advance to the first parties, from time to time, as required by them for the purpose of getting out and delivering said logs in said mill boom, for payment on the said land contracted from said Frost, on paying said Frost any lien he may have on said logs by his said land contract, or permission given to cut logs: *Provided*, The advances hereinafter to be made shall not exceed in all the sum of eleven thousand dollars on four million feet of logs to be hereinafter put in the river, or in that proportion as fast as said logs are put in.

"It is further understood and agreed that when said lumber shall reach Chicago, the first parties may and shall have the right to dispose of their interest in the lumber at Chicago, or any part thereof, subject to the lien thereon of the second party, which is hereby given for the fulfillment of this contract, saw bill, advances and liabilities incurred by or for rents or other acts or expenses to carry out the manufacture, shipment or sale of the lumber under this contract, and they accounting and paying over to said second parties any sum found due them on final settlement under this contract. It is further mutually agreed that the lumber from said logs shall be inspected and measured as and when shipped, and the inspection bills shall be the

basis of settlement, and binding and conclusive upon both parties, both as to quality and quantity.

"The proceeds of the sales of said lumber shall be disposed of as follows: First shall be deducted the inspection, freight, insurance, dockage, commissions and other charges actually and necessarily incurred and paid in the shipping and selling of said lumber. Then there shall be paid to the second parties all advances heretofore made, or that shall be made by the second parties, with ten per cent. interest from the time the same were made respectively to the time of settlement. Then there shall be paid to the first parties eight dollars per thousand on one-half of said lumber, with the addition to or deduction from the sum provided for above in case of variation from thirty per cent. of the three upper qualities. Then there shall be paid to the second parties the sum of four dollars per thousand feet on one-half of the lumber sawed, for saw bill, and the balance of the proceeds, if any, shall be divided equally between the parties, share and share alike: *Provided*, That if there shall not be enough of the proceeds to make the payments above specified, then the deficiency shall come out of the payment for one-half of the logs and payment for saw bill in proportion to the sum above mentioned. In witness whereof the parties have hereunto set their hands the day and year first above written."

The case was referred, and the report of the referee was confirmed, and judgment rendered in favor of plaintiff for four hundred and five dollars and ninety-six cents. The plaintiff filed exceptions to the referee's report, and brings the case up on error.

The main question raised was upon the construction of the last paragraph of the contract, as to the distribution of the proceeds of sales of lumber. The plaintiff claimed that the deductions for charges, advances, etc., were to be taken from the gross undivided proceeds; and the defendant, that they were to be taken from the share of the plaintiff's

assignors, Buck, Hollihan & Co. The referee found according to the defendant's construction.

*William A. Clark* and *Ashley Pond*, for plaintiff in error.

*McDonell & Cobb* and *Gaylord & Hanchett*, for defendant in error.

COOLEY, J.

We are all of opinion that the plaintiff's construction of the contract in suit was the correct one. The court should have sustained the exceptions to the referee's report, so far as they related to his computation of the amount due, and should have rendered judgment in favor of plaintiff, for five thousand four hundred and sixty-four dollars and sixty-one cents, with interest from October 5th, 1867. The amount at this date is, seven thousand six hundred and eighty-two dollars and ten cents, and the judgment in the court below will be set aside and vacated, and judgment entered in this court for the above sum, and the costs of both courts.

The other Justices concurred.